### SALISBURY v. JULIUS GROSSMAN, Inc., et al.
### No. 7946.

District Court, E. D. New York.

Jan. 27, 1938.

Brown & Jones, of New York City (Donald L. Brown, of New York City, of counsel), for plaintiff.

Samuel Robert Weltz, of New York City (Benjamin M. Franklin, of New York City, of counsel), for defendants.

ABRUZZO, District Judge.

This action was brought by the plaintiff, owner of United States letters patent No. 1,455,887, secured May 22, 1923 (application September 12, 1921), against the defendants for an infringement of the said letters patent.

Claim 1 of the patent is the only claim in suit and reads as follows: "A shoe or footwear consisting of a heel portion, a metatarsal portion, and a toe portion having the inner toe edge on a straight line with the deflected lower side of said heel portion before the turn of the extension in front toward the median line of the wearer's toes, substantially as shown and described."

In all the years the patent has been issued plaintiff granted but one license and received but $20 in royalties. It is plain that the patent was not very marketable. Whether or not the plaintiff's patent is valid was placed in issue by the defendant. They contended that the same type of shoe containing all of the original features of the patent had been manufactured and sold ten years prior to the issuance of the letters patent to the plaintiff, and that all the essential novel features claimed in the patent were contained in shoes sold and manufactured prior to the application of plaintiff for a patent.

Whether or not the plaintiff has a valid patent is a moot question.

Plaintiff's Exhibit 4 is the alleged infringing shoe. Defendants produced upon the trial unquestioned proof that this Exhibit 4 was manufactured by them since 1911, twelve years before plaintiff procured his patent. The shoe lasts and patterns were identified from the records of Stewart Potter Company as having been used in the manufacture of said shoes since the year 1911. The famous Coward Shoe Company manufactured and sold a shoe exactly like Exhibit 4. There was no contradiction of this fact.

In plaintiff's patent, the highest point in the toe box was at the big toe, whereas in the alleged infringing shoe the highest point was in the center of the toe box. The plaintiff's patent featured a straight line from heel to the small toe, whereas in the alleged infringing shoe there was not only no such straight line, but there was a marked curve at the arch portion. There was, therefore, no infringement.

Judgment for the defendant.